IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

**PROFESSIONAL DOG BREEDERS** :
**ADVISORY COUNCIL;** :
**NAT SLADKIN; SUSAN INSERRA;** :
**and NATHAN MYER,** :          **CIVIL NO.1:CV-09-0258**
:
      **Plaintiff** :
:
      **v.** :
:
**DENNIS WOLFF, Secretary,** :
**Pennsylvania Department of** :
**Agriculture,** :
:
      **Defendant** :

## M E M O R A N D U M

Before the court are the parties' cross-motions for summary judgment.
(Docs. 10, 13.)   The parties have briefed the issues, and the motions are ripe for
disposition.

I.      __Background__[1]

A. __The Parties__

This action was brought by three individual Plaintiffs and one association
acting on behalf of dog breeders across Pennsylvania.  Two of the three individual
Plaintiffs – Nat Sladkin and Susan Inserra – are out-of-state dog dealers who own
pet shops in New Jersey.  The other individual Plaintiff – Nathan Myer – is a
Pennsylvania resident who "engages in the business of raising dogs."  (Doc. 1 at 6.)
All Plaintiffs are subject to the Pennsylvania Dog Law at issue here.  The
organizational Plaintiff is the Professional Dog Breeders Advisory Council, Inc., an
association established "to provide industry education, advice and/or expertise for

---

[1] Both parties agree that there are no genuine issues of material fact and that summary
judgment is appropriate.  Therefore, the court will rely on the facts as supported by the briefs and will
view the facts in the light most favorable to the non-moving party as it applies to the issues at hand.

professional dog breeders" across the state.  Defendant in this case is Nathan Wolff, acting in his official capacity as Secretary of the Pennsylvania Department of Agriculture.

### B. **The Complaint**

The instant action is a facial challenge to certain provisions of the Pennsylvania Dog Law, 3 P.S. § 459-101 *et. seq.*, as amended by Act 119 ("Dog Law").[2]  The Dog Law was originally passed in 1982 and was amended on October 9, 2008, by Act 119.  Plaintiffs' specifically challenge various parts of sections 207, 211, 218 and 901.  (Doc. 29, Pls. Br. in Opp. at 1.)  Plaintiffs allege that these sections of the Dog Law violate the following provisions of the United States Constitution: The Commerce Clause, the Privileges and Immunities Clause, the Fourth Amendment prohibition against unreasonable searches, the Due Process and Equal Protection Clauses of the Fourteenth Amendment, and the Fifth Amendment prohibition against unlawful government takings.  In addition, Plaintiffs claim that the application process for obtaining a dog license violates the Federal Privacy Act of 1974, Pub. L. No. 93-579, 88 Stat. 1896, 5 U.S.C. § 552A.  (Doc. 1.)

Plaintiffs' claims are as follows.  First, Plaintiffs contest the newly established kennel requirements.  Sections 207(h) and (i) outline the kennel requirements for Commercial Kennels.  *See* 3 P.S. § 459-207(h)-(i).  These requirements include minimum standards for space, temperature, access, safety, cleanliness, veterinary needs, euthanization, food, and other provisions relating

---

[2] Plaintiffs bring this action as a facial challenge to Act 119.  However, some of the contested provisions are contained in the original version of the Pennsylvania Dog Law passed in 1982.  Therefore, the court will analyze this as a facial challenge to the amendments and the Dog Law as a whole.

specifically to the living conditions provided for each dog.  (*Id.*)  This section provides the most sweeping changes to the Dog Law and outlines numerous provisions relating to kennel requirements not previously required.

Plaintiffs further challenge Section 209 of the Dog Law regarding licensing fees for out-of-state dealers.  The relevant part of Section 209 reads as follows:

> (a) Out-of-state dealers.--All out-of-state dealers shall on or before January 1 of each year, apply to the secretary for an out-of-state dealer license. The fee for such license shall be $300, plus appropriate kennel license fees required under section 206. All fees collected under this section shall be remitted to the State Treasury for credit to the Dog Law Restricted Account. All licenses under this section shall expire upon December 31 of the year for which the license was issued. The forms for the application and license shall be approved by the secretary.
>
> (a.1) In-state dealers.--
>
> (1) Except as set forth in paragraph (2), a dealer residing in this Commonwealth must, by January 1 of each year, obtain a license from the department. A dealer license shall expire on December 31 of the year for which it was issued. The license fee for a dealer license shall be the same as the license fee established for Kennel Classes C-I through C-VI as calculated based on the number of dogs sold, offered for sale or maintained by the applicant. It shall be unlawful for a person to sell or offer for sale a dog belonging to another for a fee or commission or maintain a dog at retail or wholesale for resale to another without obtaining a dealer license or a dealer kennel license from the department.
>
> (2) This subsection shall not apply to a person that secures a dealer kennel license from the department under section 206.

3 P.S. § 459-209.  The requirement of a $300 licensing fee for out-of-state dealers has been imposed since the original Dog Law was enacted in 1982, however, it has not been challenged until now.

3

Plaintiffs also contest certain provisions of Section 211 of the Dog Law, regarding the administrative process after license refusal or revocation.  3 P.S. § 459-211.  This provision was also amended by Act 119 by adding a requirement that someone convicted of a cruelty to animals charge shall be denied a license or have it revoked if a license had already been issued.  Act 119 also added factors the secretary should consider when deciding if a license should be denied or revoked:

> (1) The gravity of the violation.
> (2) The number of current or past violations.
> (3) The potential effect of the violation on the health or welfare of a dog.
> (4) Whether the kennel has been warned previously to correct the violation.
> (5) Whether the violation resulted in a criminal conviction.
> (6) The length of time that has elapsed between violations.

3 P.S. § 459-211(a.1).

Finally, Act 119 added an appeal process for individuals who have had their license refused or revoked.  Section 211 reads in relevant part:

> The secretary shall revoke a kennel license, dealer license or out-of-state dealer license if a licensee is convicted of a violation of 18 Pa.C.S. § 5511 (relating to cruelty to animals) or of substantially similar conduct pursuant to a cruelty law of another state. The secretary shall not issue a kennel license, dealer license or out-of-state dealer license to a person that has been convicted of a violation of 18 Pa.C.S. § 5511 within the last ten years.
>
> (1) The secretary shall provide written notice of a kennel license, dealer license or an out-of-state dealer license revocation, suspension or refusal to the person whose license is revoked, suspended or refused. The notice shall set forth the general factual and legal basis for the action and shall advise the affected person that within ten days of receipt of the notice he may file with the secretary a written request for an administrative hearing. The hearing shall be conducted in accordance with 2 Pa.C.S. (relating to administrative law and procedure).

(2) Written notice of revocation, suspension or refusal shall be served by personal service or by registered or certified mail, return receipt requested, to the person or to a responsible employee of such person whose license is revoked, suspended or refused. Revocation or refusal shall be effective upon the expiration of the ten-day period for requesting an administrative hearing, unless a timely request for a hearing has been filed with the department.

3 P.S. § 459-211(a)-(b). Plaintiffs claim that this process violates their procedural due process rights and amounts to an unlawful government taking.

Plaintiffs next contest the constitutionality of Section 218, relating to kennel inspections, which reads as follows:

State dog wardens and other employees of the department are hereby authorized to inspect all licensed kennels, all dogs within the Commonwealth and all unlicensed establishments which are operating as a kennel as defined by section 206.

For purposes of inspection, a State dog warden and other full-time employees of the department shall be authorized to enforce the provisions of this act and regulations promulgated by the department under this act. State dog wardens and employees of the department shall inspect all licensed kennels within the Commonwealth at least twice per calendar year to enforce the provisions of this act and regulations promulgated by the department under this act. State dog wardens and only regular, full-time employees of the department shall be authorized to enter upon the premises of approved medical, dental or veterinary schools, hospitals, clinics or other medical or scientific institutions, organizations or persons where research is being conducted or where pharmaceuticals, drugs or biologicals are being produced. It shall be unlawful for any person to refuse admittance to such State dog wardens and employees of the department for the purpose of making inspections and enforcing the provisions of this act.

3 P.S. § 459-218(a). Act 119 amended the previous version of Section 218 by authorizing department officials to inspect all kennels within the Commonwealth at least twice per year, instead of only once per year. (*Id.*) Plaintiffs allege these inspections are akin to warrantless searches prohibited by the Fourth Amendment.

In conjunction with this claim, Plaintiffs dispute Section 901(a) regarding enforcement of the Act. Section 901 reads:

> The secretary, through State dog wardens, employees of the department and police officers, shall be charged with the general enforcement of this law. The secretary may employ all proper means for the enforcement of this act , including issuing notices and orders, filing violations for criminal prosecution, seeking injunctive relief, imposing civil penalties and entering into consent agreements. The secretary may enter into agreements pursuant to section 1002, which shall be filed with the department, for the purpose of dog control. State dog wardens and employees of the department are hereby authorized to enter upon the premises of any person for the purpose of investigation. A dog warden or employee of the department may enter into a home or other building only with the permission of the occupant or with a duly issued search warrant.

3 P.S. § 459-901(a). Section 901 allows for dog wardens or employees of the department to conduct searches into a kennel owners business or home if they have a duly authorized search warrant based on probable cause. (*Id.*)

## C. **Procedural History**

Plaintiffs filed their original complaint on February 9, 2009. (Doc. 1.) Plaintiffs then filed an amended complaint on February 13, 2009. (Doc. 3.) Defendant filed an answer to the complaint on February 20, 2009. (Doc. 7.) On April 3, 2009, Plaintiffs and Defendant filed cross-motions for summary judgment and briefs in support thereof. (Docs. 10, 11.) It is these cross-motions which are currently before the court.

## II.     **Legal Standard**

Summary judgment is proper when "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled

to a judgment as a matter of law." Fed. R. Civ. P. 56(c); *accord Saldana v. Kmart Corp.*, 260 F.3d 228, 231-32 (3d Cir. 2001). A factual dispute is "material" if it might affect the outcome of the suit under the applicable law. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). A factual dispute is "genuine" only if there is a sufficient evidentiary basis that would allow a reasonable fact-finder to return a verdict for the non-moving party. *Id.* at 248. The court must resolve all doubts as to the existence of a genuine issue of material fact in favor of the non-moving party. *Saldana*, 260 F.3d at 232; *see also Reeder v. Sybron Transition Corp.*, 142 F.R.D. 607, 609 (M.D. Pa. 1992).

Once the moving party has shown that there is an absence of evidence to support the claims of the non-moving party, the non-moving party may not simply sit back and rest on the allegations in its complaint. *See Celotex Corp. v. Catrett*, 477 U.S. 317, 324 (1986). Instead, it must "go beyond the pleadings and by [its] own affidavits, or by the depositions, answers to interrogatories, and admissions on file, designate specific facts showing that there is a genuine issue for trial." *Id.* (internal quotations omitted); *see also Saldana*, 260 F.3d at 232 (citations omitted). Summary judgment should be granted where a party "fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden at trial." *Celotex*, 477 U.S. at 322-23. "'Such affirmative evidence – regardless of whether it is direct or circumstantial – must amount to more than a scintilla, but may amount to less (in the evaluation of the court) than a preponderance.'" *Saldana*, 260 F.3d at 232 (quoting *Williams v. Borough of West Chester*, 891 F.2d 458, 460-61 (3d Cir. 1989)).

The court is permitted to resolve cross-motions for summary judgment concurrently. *InterBusiness Bank, N.A. v. First Nat'l Bank of Mifflintown*, 318 F.Supp.2d 230, 235 (M.D.Pa. 2004) (describing concurrent resolution of cross-motions for summary judgment as "a formidable task"); 10A Charles Alan Wright *et al.*, Federal Practice and Procedure § 2720 (3d ed. 1998). When doing so, the court is bound to view the evidence in the light most favorable to the non-moving party with respect to each motion. Fed. R. Civ. P. 56; *Raymond Proffitt Found. v. U.S. Envtl. Prot. Agency*, 930 F. Supp. 1088, 1096 (E.D. Pa. 1996).

## III.    Discussion

Plaintiffs bring a facial challenge to the constitutionality of the Dog Law and the Act 119 amendments. Defendant counters that not only is the Dog Law constitutional, but also that Plaintiffs lack standing, and that some of their claims are either not ripe for review or are moot. In the interest of efficiency and organization, each allegation in the complaint will be addressed separately. However, as a preliminary matter the court will first dispose of Defendant's standing challenge.

### A. Standing

Defendant argues that certain Plaintiffs lack standing to bring this suit. Specifically, Defendant challenges the Professional Dog Breeders Advisory Council's ("PDBAC") ability to bring any constitutional or Privacy Act claims.[3] For

---

[3] Defendant also challenges PDBAC standing with regard to the Commerce Clause and Privileges and Immunities claims because PDBAC is not engaged in interstate commerce, nor is the association an out-of-state resident. Defendant does not contest the ability of the two out-of-state Plaintiffs to bring these claims. The Supreme Court has already determined that "the presence of one party with standing is sufficient to satisfy Article III's [standing] requirement." *Rumsfeld v. Forum for Academic and Inst. Rights, Inc.*, 547 U.S. 47, 53 n. 2 (2006). Because out-of-state Plaintiffs Sladkin and

(continued...)

the reasons set forth below, PDBAC will be allowed to proceed with their claims as they have established associational standing.

Generally, to establish standing under Article III, § 2 of the United States Constitution, a plaintiff must show injury in-fact that is related to the alleged conduct of the defendant, and that this injury can be appropriately remedied through the courts. *See Pa. Psychiatric Soc. v. Green Spring Health Serv., Inc.*, 280 F.3d 278, 283 (3d Cir. 2002) (explaining *Friends of the Earth Inc. v. Laidlaw Envtl. Servs. (TOC), Inc.*, 528 U.S. 167 (2000)). Courts have recognized that individuals often form associations or organizations to "create an effective vehicle for vindicating interests that they share with others." *Id.* (quoting *Int'l Union, United Auto., Aerospace & Agric. Implement Workers v. Brock*, 477 U.S. 274 (1986)). In line with this observation, associations can assert claims for injuries sustained directly by the organization, or assert claims in a representational capacity for injuries sustained by an association's members. *Id.*; *see also Hunt v. Wash. State Apple Adver. Comm'n*, 432 U.S. 333, 343 (1977).

Associations can satisfy the standing requirement through a showing that "(a) its members would otherwise have standing to sue in their own right; (b) the interests it seeks to protect are germane to the organization's purpose; and (c) neither the claim asserted nor the relief requested requires the participation of individual members in the lawsuit." *Hunt*, 432 U.S. at 343. With regard to the third prong, the fact that some individuals participate in the suit does not disqualify an association from having standing. *Pa. Psychiatric Soc.*, 280 F.3d at 283.

---

[3](...continued)
Inserra have standing to raise these claims, the court will not further address Defendant's arguments on this issue.

In the instant case, PDBAC has associational standing to bring this facial constitutional challenge to the Dog Law on behalf of commercial dog breeders across the state. Individual commercial dog breeders, the same constituency that makes up PDBAC's membership, would have standing to bring this facial challenge in their own right because they would meet the *Pa. Psychiatric* test. In addition, PDBAC was established "to provide [the dog breeding industry with] education, advice and/or expertise for professional dog breeders and to protect the interests of its membership." (Doc. 29 at 11.) Protecting Pennsylvania dog breeders from an alleged unconstitutional statute is germane to the organizations purpose. Lastly, neither the claim nor the relief requested in this case requires individual participation. PDBAC only seeks prospective declaratory and injunctive relief.[4] When an association seeks prospective or injunctive relief, individual participation is not normally necessary. *United Food and Commercial Workers Union Local 751 v. Brown Group, Inc.*, 517 U.S. 544, 546 (1996) (explaining that "'individual participation' is not normally necessary when an association seeks prospective or injunctive relief for its members, but . . . such participation would be required in an action for damages to an association's members"). PDBAC has satisfied the three-prong associational standing test outlined in *Hunt*, and the court will address the merits of Plaintiffs' claims.

## B. Out-of-State Licensing Fee

Plaintiffs dispute the $300 licensing fee imposed on out-of-state dog breeders under Section 209. Section 209(a) provides: "All out-of-state dog dealers

---

[4] Individual out-of-state Plaintiffs Sladkin and Inserra also seek reimbursement for all past paid licensing fees. For reasons discussed below this requested relief will be denied.

shall . . . apply to the secretary for an out-of-state dealer license. The fee for such license shall be $300, *plus* appropriate kennel license fees required under section 206." 3 P.S. § 209(a) (emphasis added). In contrast, the section pertaining to in-state dog dealers states: "The license fee for a dealer license shall be the same as the license fee established for Kennel Classes C-I through C-VI as calculated based on the number of dogs sold, offered for sale or maintained by the applicant." 3 P.S. § 209(a.1)(1). However, this subsection goes on to read: "This subsection shall not apply to a person that secures a dealer kennel license from the department under section 206." 3 P.S. § 209(a.1)(2).

Plaintiffs contend that the requirement that out-of-state dog dealers pay a $300 license fee violates the dormant Commerce Clause and the Privileges and Immunities Clause of the United States Constitution. Defendant counters that the imposition of a $300 licensing fee does not unreasonably burden out-of-state dog breeders and is necessary for the proper enforcement of the Dog Law.

### 1. Commerce Clause

Generally, state legislation that creates differential economic treatment of out-of-state residents as compared to in-state residents will violate the dormant Commerce Clause and the Privileges and Immunities Clause[5] of the United States Constitution. *Freeman v. Fischer*, 563 F.Supp.2d 493, 499 (D.N.J. 2008) (citing *Or. Waste Sys., Inc. v. Dep't of Envtl. Quality of Or.*, 511 U.S. 93 (1994)). As such, "when a state statute directly regulates or discriminates against interstate commerce, or when its effect is to favor in-state economic interests over out-of-state interests, it

---

[5] The Privileges and Immunities claim cannot be brought by PDBAC because the clause does not apply to corporations, however, it can be brought by the individual Plaintiffs. *A.L. Blades & Sons, Inc. v. Yerusalim*, 121 F.3d 865, 868 (3d Cir. 1997).

is generally struck down . . . without further inquiry." *Id.* (quoting *Brown v. Forman Distillers Corp. v. N.Y. State Liquor Auth.*, 476 U.S. 573 (1986)). "Discrimination against interstate commerce in favor of local business or investment is *per se* invalid, save in a narrow class of cases in which the [State] can demonstrate, under rigorous scrutiny, that it has no other means to advance a legitimate local interest." *Cloverland-Green Spring Dairies, Inc., v. Pa. Milk Mktg. Bd.*, 298 F.3d 201, 210-11 (3d. Cir. 2002) (quoting *C & A Carbone, Inc., v. Town of Clarkstown*, 511 U.S. 383, 392 (1994)). However, "where the statute regulates even-handedly to effectuate a legitimate local public interest, and its effects on interstate commerce are only incidental, it will be upheld unless the burden imposed on such commerce is clearly excessive in relation to the putative local benefits." *Freeman v. Fischer*, 563 F.Supp.2d at 499 (quoting *Pike v. Bruce Church, Inc.*, 397 U.S. 137 (1970).

With this line of cases as guidance the court must first decide if the Dog Law is facially discriminatory, or whether the statute seeks to "even-handedly" regulate the dog breeding industry. Because the Dog Law explicitly states that a $300 licensing fee will be imposed on out-of-state dog dealers with absolutely no indication that any sort of similar fee will be imposed on in-state dog dealers, the law is facially discriminatory. *Compare* 3 P.S. § 209(a) *with* 3 P.S. § 209(a.1)(1)-(2). Therefore, the Commonwealth must show that there is "no other means to advance this legitimate local interest." *Cloverland-Green*, 298 F.3d at 211.

The Commonwealth has failed to show that the $300 fee imposed on out-of-state dog dealers is the only way to advance a legitimate local interest of the State. Section 209(a) of the Dog Law explicitly mandates that out-of-state dealers who wish to sell dogs within Pennsylvania must pay a $300 fee for a dealer license in

addition to the appropriate kennel license under Section 206.  The very next subsection, Section 209(a.1)(1) covers in-state dog dealers and allows such dealers to escape paying any additional fee if they have already secured a kennel license under Section 206.  As such, an out-of-state dealer who has a kennel license will have to pay the kennel license fee *plus* the additional $300 dealer license fee if they wish to sell dogs within the state.  In contrast, an in-state dog dealer has to pay no additional fee as long as they have payed the applicable kennel license fee.

      The Commonwealth attempts to justify the fee by reasoning that it "has been imposed in the same manner on out-of-state dealers for over a decade" and that the "Bureau has significant duties under the previous Dog Law [and] additional obligations have been imposed by Act 119."  (Doc. 26, at 5.)  Although both these justifications are factually sound, neither supplies a valid reason why a less discriminatory means could not be used to advance the objectives of the Dog Law.  Furthermore, although significant additional duties have been imposed on those in charge of enforcing the Dog Law, none of them relate to out-of-state dog dealers thereby justifying the imposition of an additional fee on these individuals.  The Pennsylvania Department of Agriculture is not charged with inspecting or regulating kennels outside of this state.  In fact, "[d]efendant cannot inspect the kennels of an out-of-state resident or do any other monitoring of the out-of-state resident's kennels."  (Doc. 29 at 39.)  Charging out-of-state dog dealers a fee so that Pennsylvania can continue to regulate in-state dog kennels is facially discriminatory.  In addition, the Commonwealth has failed to show why less restrictive means – such as requiring in-state dog dealers to pay the same additional dealer fee – cannot be used to protect the state's interests.  As such, Section 209(a) of the Dog Law is

facially discriminatory and will be struck down because it violates the dormant Commerce Clause. The Court will grant Plaintiffs' motion for summary judgment concerning the Constitutionality of Section 209(a)'s imposition of an additional $300 fee.[6]

## 2. **Damages**

Plaintiffs ask this court to order Defendant "to reimburse all excess fees charged to all out-of-state dealers" apparently since the original Dog Law was passed in 1982. (Doc. 3, at 50.) Plaintiffs have wholly failed to establish in what way they have properly asserted the rights of "all out-of-state dealers." Regardless, even if out-of-state Plaintiffs Sladkin and Inserra were only requesting this relief, damages are not appropriate as the Commonwealth is protected from suit by the Eleventh amendment.

States, as well as state agencies and departments, are generally barred from suit by the Eleventh Amendment. *MCI Telecomm. Corp. v. Bell Atl. Pa.*, 271 F.3d 491, 502 (3d Cir. 2001). Furthermore, "[the Eleventh Amendment] also bar suit[s] against state officials in their official capacity, because the state is the real party in interest inasmuch as the party seeks recovery from the state treasury." *Melo v. Hafer*, 912 F.2d 628, 635 (3d Cir. 1990).

---

[6] Plaintiffs also contend that Section 209 violates the Privileges and Immunities Clause. "The Privileges and Immunities Clause precludes discrimination against nonresidents when the governmental action 'burdens' one of the privileges and immunities protected under the clause, and the government does not have a 'substantial reason' for the difference in treatment or the discrimination practiced against the nonresidents does not bear a 'substantial relationship' to the government's objectives." *A.L. Blades & Sons, Inc.*, 121 F.3d at 870. An action is said to burden a privilege if it is fundamental. Fundamental rights are those that work to promote interstate harmony and bear "upon the vitality of the Nation as a single union." *Id.* Neither party has made much of an argument that the buying and selling of dogs is or is not a fundamental right. Regardless, the court finds Section 209(a) to be unconstitutional under the Commerce Clause making additional analysis under the Privileges and Immunities Clause unnecessary.

Plaintiffs have, not surprisingly, failed to press this issue much beyond their amended complaint.  The case law is well settled that neither the Commonwealth, not the Department of Agriculture, nor Nathan Wolff, acting in his official capacity, may be sued for money damages by Plaintiffs.  Therefore, this requested relief will be denied.

### C.  Fourth Amendment claims

Plaintiffs next contest Section 218 of the Dog Law relating to inspections. Section 218 reads in relevant part:

> State dog wardens and other employees of the department are hereby authorized to inspect all licensed kennels, all dogs within the Commonwealth and all unlicensed establishments which are operating as a kennel as defined by section 206. For purposes of inspection, a State dog warden and other full-time employees of the department shall be authorized to enforce the provisions of this act and regulations promulgated by the department under this act. State dog wardens and employees of the department shall inspect all licensed kennels within the Commonwealth at least twice per calendar year to enforce the provisions of this act and regulations promulgated by the department under this act.

3 P.S. § 459-218(a).

Both parties analyze this provision under the administrative search exception to the general warrant requirement.  However, Plaintiffs argue that this

provision does not meet the administrative search exception because dog breeding is not a "pervasively regulated industry" and, alternatively, because the searches are not limited in time, place and scope, and therefore violate their Fourth Amendment right to be free from warrantless searches. (Doc. 15 at 31.) Defendant counters that Pennsylvania kennels and breeders have been heavily regulated and therefore are properly subject to periodic administrative searches. (Doc. 26 at 10; Doc. 19-2 at 11.) For the reasons set forth below, the court agrees with Defendant that the searches authorized by Act 119 are constitutionally valid administrative searches.

It is well established that people have a reasonable expectation of privacy in their home or business, and that the Fourth Amendment prohibits unreasonable, warrantless searches in a person's home or business. *See Katz v. United States*, 389 U.S. 347, 361 (1967); U.S. Const. Amend. IV. However, the expectation of privacy in commercial settings is much more limited when it comes to "closely regulated industries." *New York v. Burger*, 482 U.S. 691, 699 (1987). "Certain industries have such a history of government oversight that no reasonable expectation of privacy [can] exist for a proprietor over the stock of such an enterprise." *Id.* (quoting *Marshall v. Barlow's, Inc.*, 436 U.S. 307, 313 (1978)). Individuals who "choose to engage in such licensed and regulated businesses accept the burdens as well as the benefits of the trade." *Frey v. Panza*, 621 F.2d 596, 597 (3d Cir. 1980). Furthermore, courts should focus on "whether the regulatory presence is sufficiently comprehensive and defined that the owner of commercial property cannot help but be aware that his property will be subject to periodic inspections undertaken for specific purposes." *Burger*, 482 U.S. at 705, n. 16 (internal citations omitted).

16

Dog breeding is a pervasively regulated activity and has been the subject of federal and state regulation since at least 1976 and 1982 respectively.  *See* 7 U.S.C. § 2131, *et. seq.; see* 9 C.F.R. § 1.1 *et. seq.* (federal regulations);  3 P.S. § 459-101 *et. seq*; *see* 7 Pa. Code § 21.1 *et. seq* . (state regulations).  In Pennsylvania, dog breeders have been on notice since 1982 that their businesses are subject to random inspections.  Furthermore, by Plaintiffs' own contention, the industry is heavily regulated, hence the reason for this suit.  Plaintiffs cannot successfully argue that the kennel industry is not pervasively regulated while at the same time maintaining that the kennel industry is *too* pervasively regulated.  Regulations concerning the kennel industry in the areas of licenses, enforcement, fees, penalties operations, and various other provisions have been around for years.  Furthermore, the kennel industry has been subject to random inspections and searches since at least 1982.  As such, the kennel industry is a pervasively regulated activity.

The United States Supreme Court has promulgated a three-prong test to determine if a warrantless inspection of a pervasively regulated activity survives constitutional scrutiny.  *See Burger*, 482 U.S. at 702.  First, the government must have a substantial interest in regulating the industry of which inspection is sought.  Second, the warrantless searches must work to further this government interest.  Third, the regulatory statute "must advise the owner of the commercial enterprise that the search is being made pursuant to the law and has a properly defined scope, and it must limit the discretion of the inspecting officers."  *Id.* at 702-03.  This final requirement is satisfied if the statute is "sufficiently comprehensive and defined that the owner of commercial property cannot help but be aware that his property will be subject to periodic inspections undertaken for specific purposes."  *Id.* at 703 (quoting

*Donovan v. Dewey*, 452 U.S. 594, 600 (1981)).  The court will address each of these in turn.

### 1. **Substantial Government Interest**

The Commonwealth has shown they have a substantial government interest in regulating the dog breeding industry.  Pennsylvania dog breeders and kennel owners have been subject to the Dog Law since 1982.  3 P.S. § 459-101 *et. seq*; *see* 7 Pa. Code § 21.1 *et. seq* . (state regulations).  Furthermore, domestic animals have been Federally regulated under the Animal Welfare Act since at least 1976.  7 U.S.C. § 2131, *et. seq.; see* 9 C.F.R. § 1.1 *et. seq.* (federal regulations).

Congress has already recognized that the government has a substantial interest in establishing humane standards for the keeping of dogs and other domestic animals.  S. Rep. 89-1281, at 1 (1966) (Conf. Rep.).  Likewise, Pennsylvania has a substantial interest in protecting domestic animals within the state and neither party disputes that the Dog Law was passed, in part, to "protect the health, safety and welfare of dogs." (Doc. 15 at 49.)

### ii. **Furthering the Regulatory Scheme**

The warrantless inspections at issue here work to further the statutes regulatory scheme.  The purpose of the Pennsylvania Dog Law is to, among other things, protect the health and welfare of dogs kept or raised in commercial kennels.  One of the few ways to ensure that this goal is being met is through random government inspections.  (Amicus Br., Doc. 19-2 at 16.)  Rarely are commercial kennels open to the public, and even more rarely is the ultimate consumer of a dog raised in a commercial kennel aware of the conditions in which the dog was kept.  (*Id.*)  Administrative searches by properly authorized state officials provides a proper

means by which the government can assure that the Dog Law is being complied with.

The Supreme Court has noted:

> If inspection is to be effective and serve as a credible deterrent, unannounced, even frequent, inspections are essential. In this context, the prerequisite of a warrant could easily frustrate inspection; and if the necessary flexibility as to time, scope, and frequency is to be preserved, the protections afforded by a warrant would be negligible.

*Burger*, 482 U.S. at 710 (quoting *United States v. Biswell*, 406 U.S. 311, 316 (1972)).

In this case, unannounced, random inspections work to further the government's interest in ensuring that the Dog Law is being complied with. The history of abuse and neglect of dogs in Pennsylvania's commercial kennels shows that the methods used for inspection prior to Act 119 were not sufficiently effective. (Amicus Br., Doc. 19-2 at 17.) Act 119 did little to change the substance of the Dog Law, instead Act 119 merely increased the frequency of inspections from a minimum of once a year, to a minimum of twice a year, a relatively insubstantial change.[7] The Dog Law was enacted for the purpose of:

> Regulating the keeping of dogs; providing for the licensing of dogs and kennels; providing for the protection of dogs and the detention and destruction of dogs in certain cases; regulating the sale and transportation of dogs; declaring dogs to be personal property and the subject of theft; providing for the abandonment of animals; providing for the assessment of damages done to animals; providing for payment of damages by the Commonwealth in certain cases and the liability of the

---

[7] Plaintiffs' fear that the Department of Agriculture can conduct "as many searches as it wants" (Doc. 15 at 30) is unsupported by the facts. There are over 2,600 kennels in the Commonwealth (*Id.* at 4), and only sixty-two members of the Department of Agriculture in charge of inspecting them. (Sec. Decl. of Susan West, Def. Ex. A., at 2.) Furthermore, these sixty-two individuals are given a number of other duties outside of inspecting dog kennels. (*Id.* at 3.)

> owner or keeper of dogs for such damages; imposing powers
> and duties on certain State and local officers and employees;
> providing penalties; and creating a Dog Law Restricted
> Account.

3 P.S. § 459-101 *et. seq.* The administrative searches work to ensure that the state's substantial interest in regulating the kennel industry is properly carried out.

### 3. Constitutional Adequacy

The Dog Law properly advises kennel owners that the search is being made pursuant to law and adequately defines the scope and the limitations of the inspecting officials. The Dog Law informs kennel owners that inspections will be made a minimum of twice a year and these inspections are properly limited in "time, place and scope." *Burger*, 482 U.S. at 710. The Dog Law properly puts those subject to search, i.e. "all licensed kennels" and "all dogs within the Commonwealth," on notice. 3 P.S. § 459-218(a). Those authorized to search are "a State dog warden and other full-time employees of the department." (*Id.*) Finally, inspections are limited to "at least twice per year." (*Id.; see also* 7 U.S.C. § 2146(a) (employing similar language under the Animal Welfare Act); *Burger*, 482 U.S. at 711 n. 21 (explaining that a statute will not be invalidated merely because no limitation on the number of searches is provided)). Inspections are limited to "enforc[ing] the provisions of [the Dog Law] and regulations promulgated by the department under [the Dog Law]." 3 P.S. § 459-218(a). Kennel owners are put on notice that at least twice a year they will be subject to an inspection to ensure that the Dog Law is being complied with. Because the Dog Law adequately advises those subject to search that such searches are being made pursuant to law and because the searches are limited in time, place and scope, a constitutionally adequate substitute

for a search warrant has been established.  As such, the court will grant Defendant's summary judgement on this issue, and deny Plaintiffs' motion.

### 4. **The Dog Law does not facially allow warrantless searches into the home or persons.**

In addition to the administrative searches provided for in Section 218, Plaintiffs contest Section 901 which relates to enforcement of the Dog Law. Plaintiffs focus on the belief that state dog wardens or employees of the Department of Agriculture can, unannounced and without a warrant, enter the home of a commercial kennel owner to conduct searches of both the kennel owner's personal residence, and any persons within that residence. (Doc. 15 at 32.)  The plain language of the statute does not lend itself to such a reading.

The statute provides two separate search mechanisms.  The first relates to when a warden or an employee of the Department of Agriculture, can inspect a commercial kennel.  These types of searches are covered by Section 218 and provide:

> (a) Premises and dogs.--State dog wardens and other employees of the department are hereby authorized to inspect all licensed kennels, all dogs within the Commonwealth and all unlicensed establishments which are operating as a kennel as defined by section 206. For purposes of inspection, a State dog warden and other full-time employees of the department shall be authorized to enforce the provisions of this act and regulations promulgated by the department under this act. State dog wardens and employees of the department shall inspect all licensed kennels within the Commonwealth at least twice per calendar year to enforce the provisions of this act and regulations promulgated by the department under this act. State dog wardens and only regular, full-time employees of the department shall be authorized to enter upon the premises of approved medical, dental or veterinary schools, hospitals, clinics or other medical or scientific institutions, organizations or persons where research is being conducted or where pharmaceuticals, drugs or biologicals are being produced. It shall be unlawful for any person to refuse admittance to such

21

State dog wardens and employees of the department for the purpose of making inspections and enforcing the provisions of this act.

(b) Records.--State dog wardens and other employees of the department shall be authorized to inspect the records required under this act of all licensed and unlicensed kennels.

(c) Search warrant.--State dog wardens and other employees of the department may apply for a search warrant to any court of competent jurisdiction authorized to issue a search warrant for the purposes of inspecting or examining any kennel or for the purpose of removing any dog under section 207 or 211. The warrant shall be issued upon probable cause. It shall be sufficient probable cause to show any of the following:

(1) That, in cases involving kennels other than private kennels, the State dog warden or an employee of the department has been refused entry as defined under section 220(a) for an inspection or examination of the kennel.

(2) The State dog warden or employee of the department has reasonable grounds to believe that a violation of this act or the regulations promulgated under the authority of this act has occurred.

3 P.S. § 459-218.  In contrast, Section 901 (regarding enforcement and penalties),

provides:

(a) General rule.--The secretary, through State dog wardens, employees of the department and police officers, shall be charged with the general enforcement of this law. The secretary may employ all proper means for the enforcement of this act , including issuing notices and orders, filing violations for criminal prosecution, seeking injunctive relief, imposing civil penalties and entering into consent agreements. The secretary may enter into agreements pursuant to section 1002, which shall be filed with the department, for the purpose of dog control. State dog wardens and employees of the department are hereby authorized to enter upon the premises of any person for the purpose of investigation. A dog warden or employee of the department may enter into a home or other building only with the permission of the occupant or with a duly issued search warrant.

3 P.S. § 459-901.

These two sections deal with entirely different provisions.  The first deals

with inspections of the kennel itself and is authorized under the warrant exception

for administrative searches discussed above. The second deals with enforcement of the Dog Law and investigations (not routine inspections) for suspected violations of the Dog Law. Under this section it is possible that an individual's house or business will be searched, however, only with a "duly issued search warrant" premised on probable cause. The two sections are separate and distinct provisions dealing with entirely different conduct. Nothing on the face of the Dog Law indicates that these provisions will somehow be read together by the Department of Agriculture thereby letting dog wardens or employees of the department enter the home of a dog owner and search the premises without probable cause or a search warrant. Administrative searches of dog kennels to establish that the kennels are in compliance with the statute are authorized as an exception to the general warrant requirement. Investigations into suspected violations of the Dog Law do not authorize warrantless searches, such searches much be based on probable cause and a search warrant must be issued.

Because the Pennsylvania Dog Law does not authorize warrantless searches of private premises and because administrative searches of dog kennels are permissible under the Constitution, the court will grant Defendant's motion for summary judgment on this issue and deny Plaintiffs' motion.

### D. **Equal Protection Claim**

Plaintiffs next allege that under the Equal Protection Clause of the Fourteenth Amendment they have a fundamental right to breed and sell dogs and, as such, the Dog Law should be subject to strict scrutiny analysis and only upheld if it is "precisely tailored to serve a compelling government interest." (Doc. 15 at 41.) Defendant counters that dog breeding is not a protected fundamental right under the

Constitution, and, as such, the statute should only be subject to a rational basis review. (Doc. 19-2 at 17; Doc. 26 at 22.) For the reasons discussed below, the court finds that rational basis review provides the proper framework for analyzing the Dog Law, and the Commonwealth has shown a plausible reason for enacting the law.

The Supreme Court has been clear regarding the standard by which legislative acts challenged under the Equal Protection Clause of the Fourteenth Amendment should be scrutinized:

> [E]qual protection is not a license for courts to judge the wisdom, fairness, or logic of legislative choices. In areas of social and economic policy, a statutory classification that neither proceeds along suspect lines nor infringes fundamental constitutional rights must be upheld against an equal protection challenge if there is any reasonably conceivable state of facts that could provide a rational basis for the classification.

*F.C.C. v. Beach Commc'n Inc.*, 508 U.S. 307, 313 (1993). All that is required for a legislative act, not dealing with fundamental rights, to pass Equal Protection analysis is a "plausible reason" for its enactment. *Id.* at 313-14 (quoting *U.S. Railroad Ret. Bd. v. Fritz*, 449 U.S. 166, 179 (1980)). A court will never require that the reasons for legislative actions be articulated, and it is up to the person attacking a given piece of legislation "to negative every conceivable basis which might support it." *Id.* at 315 (quoting *Lehnhausen v. Lake Shore Auto Parts Co.*, 410 U.S. 356, 364 (1973)). Finally, in the areas of economic, social welfare, or regulatory fields, legislation will be upheld if it is "rationally related to a legitimate government purpose." *Hahn v. United States*, 757 F.2d 581, 593-94 (3d Cir. 1985).

The Commonwealth has established a rational basis for its enactment of the Pennsylvania Dog Law and the amendments provided by Act 119. Dog breeding is a lucrative business in Pennsylvania. According to Plaintiffs there are over 2,600

kennels in the Commonwealth, most of which earn their profit from the sale of puppies. (Doc. 15 at 12.) On average, a female dog in a kennel will be impregnated every seven to eight months, with at least fifteen-percent of all female dogs in a kennel birthing at one time. (*Id.*) The apparent goal is to ensure that "at all times female dogs . . . are either bred and carrying puppies or birthing puppies and prepared for being bred again." (*Id.* at 13.) Kennels try to "maintain a constant stream of puppies for sale, [meaning] female dogs must be continually bred and puppies born and sold." (*Id.*) Many of these female dogs are kept in kennels their entire lives and are never permitted outdoors. Puppies born from these dogs sell for between $250 to $550 if sold between eight and twelve weeks old. Puppies more than seventeen weeks old are deemed "worthless" by breeders.[8] (*Id.*) Given the prevalence of dog kennels, and the enormous profit they tend to generate, the Commonwealth has provided a rational basis for ensuring some sort of regulation of the industry.

Both parties agree that the purpose of the Dog Law and Act 119 is "to protect the health, safety and welfare of dogs." The state has a legitimate interest in protecting domestic animals, and the statute in question is rationally related to this objective. The Dog Law, as amended by Act 119, sets minimum standards that dog breeders and kennel owners must abide by. These standards relate to such things as dog licenses and tags, kennel conditions, the transportation of dogs, inspections of dogs and the premises in which they are kept, as well as various other tasks not in question here. The regulation of the dog breeding industry is nothing novel, the

---

[8] Plaintiffs fail to elaborate at what exactly becomes of these "worthless" dogs, but it seems apparent that the state has an interest in ensuring whatever action is taken is carried out humanely.

Pennsylvania Dog Law has been around for twenty-seven years without objection from Plaintiffs.  Act 119 only minimally changes previous version of the Dog Law, and the Commonwealth has successfully established that these changes are rationally related.  Accordingly, Defendant's motion will be granted on this issue and Plaintiffs' motion will be denied.

### E. **Plaintiffs' Taking Claim**

Plaintiffs argue that an unconstitutional taking occurs when a kennel is shut down for violations of the Dog Law.  This claim is not yet ripe for judicial review because it would require this court to engage in speculation and conjecture. Plaintiffs bring a facial challenge to the Dog Law, as such this court "must be careful not to go beyond the statute's facial requirements and speculate about 'hypothetical' or 'imaginary' cases." *Wash. St. Grange v. Wash. St. Republican Party*, 128 S. Ct. 1184, 1190 (2008); *United States v. Raines*, 362 U.S. 17, 22 (stating "[t]he delicate power of pronouncing an Act of Congress unconstitutional is not to be exercised with reference to hypothetical cases thus imagined").  The Dog Law, as amended by Act 119, has not yet been implemented therefore, this court is only free to decide constitutional problems apparent on the face of the statute.  Hypothetical questions regarding how the Dog Law will be implemented when a kennel is shut down are not appropriate for facial constitutional challenges and are thus not ripe for judicial review.

The basic purpose of the ripeness doctrine is "to protect [administrative] agencies from judicial interference until an administrative decision has been formalized and its effects felt in a concrete way by the challenging parties." *Abbott Laboratories v. Gardner*,  387 U.S. 136, 148-149 (1967).  Declaratory and injunctive

relief is granted according to the discretion of a court, and should only be an avenue for relief if a dispute is ripe. *Id.* at 148. Courts should take a two-step approach when deciding ripeness issues by "evaluat[ing] both the fitness of the issues for judicial decision and the hardship to the parties of withholding court consideration." *Id.* at 149; *General Offshore Corp. v. Farrelly*, 743 F.Supp. 1177, 1187 (D.V.I. 1990). The first question concerns cases where factual matters are at issue, and is not as relevant here. The second question deals with actual injury to the plaintiff: "It must be clear that the plaintiff is in fact injured by the actions of which he complains, or, at least, that injury is threatened." *General Offshore Corp.*, 743 F. Supp. at 1187.

In the present case, there is no threatened or immediate harm apparent. The section of the Dog Law Plaintiffs' challenge deals with the administrative procedure required after a cease and desist order has been issued on a kennel. This section only comes into play after a kennel owner has had their license refused or revoked because of a violation of 18 Pa.C.S. § 5511, which relates to cruelty to animals. 3 P.S. § 459-211(a). The secretary may refuse to revoke a license under circumstances relating to when a person has misrepresented on their application or failed to comply with the Dog Law. (*Id.*) Furthermore, the procedures outlined in the subsection challenged only take place *after* a kennel owner has received notice of the refusal or revocation, has requested a hearing, and after the hearing the refusal or revocation has been upheld.[9] Entertaining Plaintiffs' claims would require the court to engage in making "hypothetical" or "imaginary" conclusions, something not

---

[9] Even if Plaintiffs claim could survive a ripeness challenge, it seems apparent that Section 211 provides notice and an opportunity to be heard.

allowed when deciding facial challenges. *Wash. State Grange v. Wash. State Republican Party*, 128 S.Ct. 1184, 1190 (2008).

To speculate as to how the administrative procedures contained in Section 211 would play out after all of these facts have taken place is beyond this court's jurisdiction and requires unwarranted speculation. As such, Plaintiffs' takings claim is not yet ripe for review. Accordingly, Defendant's motion will be granted on this issue, and Plaintiffs' motion will be denied.

### F.  Procedural Due Process

In addition to the their takings claim, Plaintiffs allege that the administrative process after a cease and desist order has been issued violates procedural due process. This argument is without merit.

The Fourteenth Amendment to the United States Constitution prohibits a State from depriving an individual of "life, liberty, or property, without due process of law." U.S. Const. Amend. XIV. Due process has been read to mean notice of the deprivation and an opportunity to be heard. *Zappan v. Pa. Bd. of Prob. & Parol*, 152 Fed. Appx. 211, 220 (3d Cir. 2005). "Procedural due process claims, to be valid, must allege state sponsored-deprivation of a protected interest in life, liberty or property." *Rusnak v. Williams*, 44 Fed. Appx. 555, 558 (3d Cir. 2002). Assuming that Plaintiffs can establish a protected property interest in a license refusal or revocation, their Due Process claim still fails because the Dog Law affords them notice and an opportunity to be heard.

Under the Dog Law, the secretary must revoke the license of any kennel owner if they are convicted of a crime relating to cruelty to animals. 3 P.S. § 459-211(a). In addition, the secretary cannot issue a license to a potential kennel owner

if they have been convicted of a cruelty to animal charge in the past ten years. (*Id.*) The secretary may revoke a license or refuse to issue a license in a number of situations including if an individual has made misrepresentations to the department or has failed to comply with applicable regulations, among other things. 3 P.S. § 459-211(a)(1-11).

In addition to this list, the secretary is given a number of factors to consider before revocation or refusal including:

> (1) The gravity of the violation.
> (2) The number of current or past violations.
> (3) The potential effect of the violation on the health or welfare of a dog.
> (4) Whether the kennel has been warned previously to correct the violation.
> (5) Whether the violation resulted in a criminal conviction.
> (6) The length of time that has elapsed between violations.

3 P.S. § 459-211 (a.1).

Once a license has been refused or revoke, the secretary must provide written notice to the kennel owner stating the factual and legal basis for the revocation or refusal, and explaining that the kennel owner has ten days to request an administrative hearing. 3. P.S. § 459-211(b). The hearing must be conducted in accordance with Pennsylvania administrative law and procedure. (*Id.*) If no hearing is requested, only then does the revocation or refusal become final. (*Id.* at (b)(2).) The administrative process contained in 3 P.S. § 459-211(c) which Plaintiffs challenge, only applies to revocations or refusal which have become final. For a decision to become final, a kennel owner either has to have failed to request an administrative hearing, or has been given a hearing but the revocation or refusal has

been upheld.[10]  Therefore, contrary to Plaintiffs contention, the Dog Law does provide notice and an opportunity to be heard before a license can be revoked, and, thus, survives a procedural due process challenge.  3 P.S. § 459-211(b). Accordingly, Defendant's motion will be granted on this issue, and Plaintiffs motion will be denied.

### G.  Plaintiff's Privacy Act Claim

Plaintiffs contend that the 2009 Kennel License Application violates the Federal Privacy Act by requesting applicant's Social Security number without disclosing whether providing the number is voluntary or mandatory.  (Doc. 29 at 40.) Attached as Exhibit D to Plaintiffs' amended complaint is a letter from the Department of Agriculture, Bureau of Dog Law Enforcement, explaining that applicants will not be required to disclose their Social Security numbers.

Furthermore, the application allows for an applicant to provide their Social Security *or* Federal Identification Number.  Providing the latter does not implicate any provision of the Federal Privacy Act.  Accordingly, the court finds Plaintiffs' Privacy Act claims to be moot or without merit and will grant Defendant's motion for summary judgment on this issue and deny Plaintiffs' motion for summary judgment.

---

[10]  Both parties appear to argue that the administrative process contained in subsection (c) of Section 211 applies after the initial notice of refusal or revocation has been sent.  However, a  plain reading of the statute shows that this section only applies  after a refusal or  revocation has  become "effective."  Which according to subsection (b)(2) can only happen after a kennel owner has failed to request an administrative hearing, or a hearing has been held and the refusal or revocation has been upheld.

**IV.** **Conclusion**

In accordance with the foregoing discussion, the court will grant in part and deny in part Plaintiffs' motion for summary judgment, as follows. The court will grant Plaintiffs' motion on their claim that the imposition of a $300 fee for out-of-state dog breeders pursuant to 3 P.S. § 209(a) is an unconstitutional violation of the Dormant Commerce Clause. That provision is unconstitutional, should be excised, and cannot be enforced. The court will deny Plaintiffs' motion in all other respects. The court will deny Defendant's motion for summary judgment on the constitutionality of the imposition of the $300 fee for out-of-state dog breeders pursuant to 3 P.S. § 209(a). The court will grant Defendant's motion in all other respects. An appropriate order will issue.

s/Sylvia H. Rambo<br>United States District Judge

Dated:  September 11, 2009.

IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

**PROFESSIONAL DOG BREEDERS**　　:
**ADVISORY COUNCIL;**　　　　　　　:
**NAT SLADKIN; SUSAN INSERRA;**　:
**and NATHAN MYER,**　　　　　　　:　　**CIVIL NO.1:CV-09-0258**
　　　　　　　　　　　　　　　　　:
　　　　**Plaintiff**　　　　　　　:
　　　　　　　　　　　　　　　　　:
　　　　**v.**　　　　　　　　　　　:
　　　　　　　　　　　　　　　　　:
**DENNIS WOLFF, Secretary,**　　　:
**Pennsylvania Department of**　　:
**Agriculture,**　　　　　　　　　:
　　　　　　　　　　　　　　　　　:
　　　　**Defendant**　　　　　　　:

# O R D E R

In accordance with the accompanying memorandum of law, **IT IS
HEREBY ORDERED THAT**:

(1) Plaintiffs' motion for summary judgment (Doc. 13) is
**GRANTED IN PART AND DENIED IN PART** as follows:

(a) Plaintiffs' motion is **GRANTED** as to their claim that the
imposition of a $300 fee on out-of-state dog breeders pursuant to 3 P.S. § 459-209(a)
violates the Commerce Clause of the United Stated Constitution. That provision is
unconstitutional, shall be excised from the statute and cannot be enforced;

(b) Plaintiffs' motion for summary judgment is **DENIED** in all
other respects.

(2) Defendant's motion for summary judgment **IS GRANTED IN PART
AND DENIED IN PART** as follows:

(a) Defendant's motion is **DENIED** as to Plaintiffs' claims that
the imposition of a $300 fee on out-of-state dog breeders pursuant to 3 P.S. § 459-

209(a) violates the Commerce Clause of the United Stated Constitution.  That provision is unconstitutional, shall be excised from the statute and cannot be enforced;

(b) Defendant's motion is **GRANTED** in all other respects.

(3) The clerk of court shall enter judgment consistent with this order and close the case.

s/Sylvia H. Rambo
United States District Judge

Dated:  September 11, 2009.